**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────

JOHN D. NAVARRA,

                    Plaintiff,

      v.                                    1:24-cv-00946 (AMN/TWD)

MARCY DREIMILLER, SARATOGA HOSPITAL,
RONALD BENTLEY,

                    Defendants.
───────────────────────────────

**APPEARANCES:**                       **OF COUNSEL:**

**JOHN D. NAVARRA**
21 Wells Street
Apt. 401
Saratoga Springs, New York 12866
*Plaintiff, pro se*

**TRAUB LIEBERMAN STRAUS &**       **HILLARY JACOBS RAIMONDI,**
**SHREWSBERRY LLP**              **ESQ.**
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On July 30, 2024, *pro se* Plaintiff John D. Navarra commenced this action pursuant to 28

U.S.C. § 1331, alleging various causes of action under "the Americans with Disabilities Act

Amendments Act of 2008 (ADAAA) et seq., the Federal Declaratory Judgment Act, Title VII of

the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990 (ADA),

Sections 102 and 103 of the Civil Rights Act of 1991, and The Rehabilitation Act of 1973" against

Defendants Marcy Dreimiller, Ronald Bentley, and Saratoga Hospital ("Defendants").  Dkt. No. 1 ("Complaint") at 1.[1]  On November 18, 2024, after being granted an extension of time to do so, Defendants filed a motion to dismiss the Complaint in its entirety under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  *See* Dkt. No. 10 ("Motion").  Following issues with service through Federal Express, Defendants filed a letter on December 2, 2024, requesting an extension of time for Plaintiff to file a response to the Motion, which the Court granted on December 10, 2024.  *See* Dkt. Nos. 14, 17.  Plaintiff filed a letter on January 15, 2025, seeking additional time to respond to the Motion, which the Court granted on February 27, 2025.  *See* Dkt. Nos. 18, 22.  In the interim, Plaintiff filed a "motion to strike Defendants' defective pleadings and motion for default judgment," raising purported procedural errors with Defendants' Motion but not addressing any of the Motion's substantive arguments, *see* Dkt. No. 20, which Defendants opposed on February 6, 2025, *see* Dkt. No. 21.  Having failed to properly respond to the Motion, on May 27, 2025, the Court granted Plaintiff "one final opportunity" to do so after Plaintiff filed a second letter seeking an extension on May 23, 2025.  *See* Dkt. Nos. 26, 27.  On June 27, 2025, Plaintiff filed two motions: (1) a "motion to appoint [a] guardian ad litem"; and (2) a "motion to resolve the court's deadlines conflict, motion for leave to file an amended complaint, and partial answer to Defendants' motion to dismiss."  *See* Dkt. Nos. 28, 29.  Defendants opposed both of the June 27, 2025 submissions on July 17, 2025.  *See* Dkt. No. 30.  Accordingly, Defendants' Motion, as well as Plaintiff's submissions, are ripe for adjudication.

For the reasons set forth below, Defendants' Motion is granted, Plaintiff's motion to strike is denied, Plaintiff's motion to appoint a guardian *ad litem* is denied, and Plaintiff's "motion to

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

resolve the court's deadlines conflict, motion for leave to file an amended complaint, and partial answer to Defendants' motion to dismiss" is denied.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and Plaintiff's opposition to Defendants' motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (On a motion  to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Sommersett v. City of New York*, No. 09-CIV-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations.") (citation omitted).  Plaintiff's allegations are assumed to be true for purposes of ruling on Defendants' Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *Williams v. N.Y.C. Hous. Auth.*, 816 Fed. Appx. 532, 534 (2d Cir. 2020).

### A.  The Parties

Plaintiff is a resident of the State of New York and was employed as a "Patient Transporter" by Defendant Saratoga Hospital from June 18, 2021 to July 5, 2021.  *See* Dkt. No. 1 at ¶¶ 3, 51, 73.  Plaintiff alleges that he "is disabled as that term is defined under the [Americans with Disabilities Act]" because he was previously diagnosed with "Asperger's Syndrome, an Autism

Spectrum Disorder listed as a[n] Actual Permanent Disability under the [Americans with Disabilities Act]." *Id.* at ¶¶ 32-33.

Defendant Saratoga Hospital is a healthcare services provider and corporation headquartered in Saratoga Springs, New York. *Id.* at ¶ 4. Defendant Marcy Dreimiller is the Vice President of Human Resources at Defendant Saratoga Hospital, and Defendant Ronald Bentley is a "Senior Human Resources Generalist" at Defendant Saratoga Hospital. *Id.* at ¶¶ 6-7.[2]

### B. The Complaint

Plaintiff alleges that, on or about May 1, 2021, he applied for a job with Defendant Saratoga Hospital as a "Transporter (Patients & Materials)." *Id.* at ¶¶ 39-41. On May 26, 2021, Plaintiff interviewed for the job with Defendant Saratoga Hospital's Human Resources Department, wherein Plaintiff claims that he sought a reasonable accommodation for his Autism Spectrum Disorder, specifically requesting to start work as a part-time rather than full-time employee. *Id.* at ¶¶ 43-44. Defendant Saratoga Hospital purportedly granted his request, "agree[ing] that this work schedule would enable [Plaintiff] to transition more effectively from his Special Education program at BOCES into a corporate work environment." *Id.* at ¶ 44. Plaintiff was offered employment on June 2, 2021, and began working as a Patient Transporter on June 18, 2021, "which consisted of reading copious online training materials at home, and of transporting two deceased patients from their place of death in the hospital to the morgue." *Id.* at ¶¶ 49, 51, 55.

---

[2] Plaintiff characterizes Defendants Dreimiller and Bentley as "Responsible Management Officials," who "are or were responsible for the action(s) or contribute[d] to the adverse employment action(s) and decision(s), that damaged the Plaintiff." *Id.* at ¶¶ 5-7. Plaintiff also lists four other individuals as "Responsible Management Officials" in the Complaint but only obtained summonses and served process on Defendants Dreimiller and Bentley. *See* Dkt. No. 5. To the extent that Plaintiff intended to name additional defendants in this action, he failed to properly serve those defendants with a copy of the summons and Complaint in violation of Fed. R. Civ. P. 4. *See also* N.D.N.Y L.R. 4.1. Accordingly, those four individuals are non-parties rather than defendants.

On June 24, 2021,[3] Plaintiff claims that he and a colleague were caught using electronic cigarettes in the hospital break room "while on an authorized break." *Id.* at ¶ 56. Non-party Daniel Wright, a dispatcher in the Patient Transportation Department, reported the behavior to non-party Thomas Morgan, the Supervisor of the Transportation and Materials Department, who summoned Plaintiff to his office on June 25, 2021 to discuss the hospital's "Smoke Free Campus" policy. *Id.* at ¶¶ 12-13, 58-59. Plaintiff admitted to using the electronic cigarette the day prior and stated that he did so after observing his colleague do so, noting that the colleague was "training him[] to do the same thing." *Id.* at ¶ 59. Plaintiff contends that he informed Morgan during their meeting that he "used the vape because he thought it would help him fit in with his co-workers," who were "also regularly vaping in plain view in the [b]reak [r]oom," and promised Morgan that he would not vape at work again. *Id.* at ¶ 60. Morgan purportedly informed Plaintiff that he would record their discussion about the electronic cigarette use as a "verbal warning" and that "no further disciplinary action would be taken." *Id.* at ¶¶ 60-61 ("No other disciplinary matters were discussed.").

On July 5, 2021, Plaintiff was summoned by Defendant Bentley to another meeting to discuss the hospital's "Smoke Free Campus" policy as well as "other matters." *Id.* at ¶ 63. In addition to discussing the June 24, 2021 incident, Defendant Bentley allegedly "abruptly and loudly accused Plaintiff of a litany of additional policy violations without providing any evidence other than speculative second- or third-person hearsay," all of which Plaintiff denied, including that Plaintiff (1) smoked marijuana while on duty; (2) consumed alcohol while on duty; (3) left

---

[3] While the Complaint lists the date of this incident as "May 24, 2021," the Court infers from the preceding paragraphs and information that follows that such was a typographical error. Plaintiff also later alleges that the memorandum memorializing this incident "entered the incorrect month" and that "[t]he timeline for the events listed therein occurred in June." *Id.* at ¶ 62.

"vulgar voicemails" for other employees while using an internet-based messaging system that was not part of the hospital's computer network; and (4) made "sexually harassing" remarks to another employee at the hospital. Dkt. No. 1 at ¶¶ 63-67, 143-151. Plaintiff claims that he requested to call his father during the meeting with Defendant Bentley "because he was unable to understand the purpose of the [] meeting and was unable to defend himself against the avalanche of wild accusations." *Id.* at ¶ 68. Defendant Bentley did not allow Plaintiff to call his father. *Id.*

Defendant Bentley ultimately terminated Plaintiff's employment following the meeting on July 5, 2021. *Id.* at ¶ 70. Plaintiff claims that his father appealed the termination decision on Plaintiff's behalf to Defendant Dreimiller on July 7, 2021. *Id.* at ¶ 74. In response, "with a terse email," Defendant Dreimiller indicated that she would look into the matter, and "ignored [Plaintiff's father's] requests, wherein he politely requested an explanation for Plaintiff's dismissal." *Id.* at ¶ 76.

Plaintiff claims that he was fired "because of his mental disability and other illegal reasons," and that he "endured and was subjected to a pattern of illegal harassment including verbal abuse, disparate treatment with respect to a range of employment policy matters, adverse employment actions, severe emotional abuse, public humiliation, and disability discrimination." *Id.* at ¶ 79. He further alleges that he exhausted all administrative remedies prior to filing the instant lawsuit, including by submitting a complaint with the Equal Employment Opportunity Commission ("EEOC"), as well as personal appeals to Defendant Dreimiller and Defendant Saratoga Hospital's Compliance Department, all of which he claims were "ignored or dismissed without action." *Id.* at ¶ 78. As a result, Plaintiff brings forth the following causes of action: (1) hostile work environment; (2) disability harassment; (3) defamation; (4) wrongful termination; (5) negligent supervision; (6) negligent training; (7) negligent retention; (8) intentional infliction

of emotional distress; (9) negligent misrepresentation; and (10) disparate treatment. *Id.* at ¶¶ 80-253.[4]  Plaintiff seeks an order from the Court reinstating his employment as a Patient Transporter and expunging certain records or information maintained by Defendants concerning Plaintiff, as well as compensation in the form of back pay, punitive damages not less than $300,000.00, in addition to attorney's fees and costs. *Id.* at 46-47.

### C. Defendants' Motion

In the Motion, Defendants argue that Plaintiff lacks standing to bring claims under Title VII of the Civil Rights Act of 1991 and the Rehabilitation Act of 1973, and that the Complaint fails to state a claim upon which relief could be granted with respect to Plaintiff's other claims. *See generally*, Dkt. No. 10.

### D. Plaintiff's Motions

Two days after requesting additional time to respond to Defendants' Motion, Plaintiff filed a "motion to strike Defendants' defective pleadings and motion for default judgment." Dkt. No. 20.  In it, Plaintiff argues that Defendants' Motion is procedurally defective because (1) it allegedly exceeded the page limit allowable by this Court's local rules; (2) it named an improper entity in the case caption as a defendant; and (3) was not personally served on Plaintiff. *See generally*, Dkt. No. 20-1.

After being granted "one final opportunity" to respond to Defendants' Motion, Plaintiff filed a "motion for a guardian *ad litem*." Dkt. No. 28.  There, Plaintiff argues that he is an

---

[4] Plaintiff does not specify the manner in which his federal claims correspond to the specific statutes pursuant to which Plaintiff brings his case.  However, for thoroughness, to the extent possible, the Court analyzes all of Plaintiff's claims under "the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) et seq., the Federal Declaratory Judgment Act, Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990 (ADA), Sections 102 and 103 of the Civil Rights Act of 1991, and The Rehabilitation Act of 1973." Dkt. No. 1 at 1.

"incompetent person," as that term is defined in Fed. R. Civ. P. 17(c) and that, as a result, he is incapable of effectively countering the arguments presented in Defendants' Motion.  *Id.* at 1, 3. Shortly after filing the motion for a guardian *ad litem*, Plaintiff filed a second motion, this time seeking to "resolve the Court's deadlines conflict" as well as seeking leave to file an amended complaint and responding to certain aspects of Defendants' Motion.  Dkt. No. 29.

## III.    STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is properly granted "when the court lacks statutory or constitutional authority to adjudicate it." *Cayuga Indian Nation of N.Y. v. Vill. of Union Springs*, 293 F. Supp. 2d 183, 187 (N.D.N.Y. 2003) (citing *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)).  To resolve such a motion, the court "accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff."  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir. 1997)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).   This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

"[I]n a *pro se* case . . . the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV.    DISCUSSION

The Court will first address Plaintiff's motions before considering Defendants' Motion and the plausibility of Plaintiff's various claims.

### A.  Plaintiff's Motion to Strike

Plaintiff's motion to strike seeks relief in the form of a default judgment in his favor based on purported procedural deficiencies associated with Defendants' Motion.  *See* Dkt. No. 20-1 at 6.

First, Plaintiff argues that Defendants' listing of "Merchants Mutual Insurance Company" ("Merchants") in the Motion's case caption violates Fed. R. Civ. P. 19(a)(1) because Plaintiff "has not been served with notice of the enjoinder of Merchants, and [] has no knowledge of Defendants' purpose in adding them as a party to this case." *Id.* at 3.  In response, Defendants concede that including Merchants in the case caption was ministerial error "unrelated to the substance of the case" and that such error does not "alter the identity of the parties that Plaintiff named and on whose behalf counsel has appeared." Dkt. No. 21 at 6-8.  Courts frequently forgive minor ministerial or typographical errors so long as they do not impact "the disposition of the current motion." *Yan v. Bocar*, No. 04-Civ-4194, 2005 WL 3005338, at *6 (S.D.N.Y. Sept. 30, 2005) (citing cases).  That is the case here and the Court declines to grant Plaintiff the extraordinary remedy of a default judgment solely on the ground that Defendants inadvertently included a non-party in the Motion's case caption.

Second, Plaintiff argues that Defendants' Motion exceeds the page limitations set forth in this Court's Local Rules.  *See* Dkt. No. 20-1 at 4.  N.D.N.Y. L.R. 7.1(b)(1) permits memoranda of law associated with motions and oppositions to be "twenty-five (25) pages in length, double spaced."[5]  The memorandum submitted in support of Defendants' Motion complies with that requirement.  *See* Dkt. No. 10-6.  Accordingly, the Court declines to strike Defendants' Motion on the ground that it fails to comply with this Court's Local Rules.

---

[5] Plaintiff's motion to strike mistakenly cites N.D.N.Y. L.R. 7.1(a), the local rule outlining the page limitation for reply briefs, which are filed in response to oppositions.  Defendants' Motion is an opening dispositive motion, not a reply brief, and therefore N.D.N.Y. L.R. 7.1(b) applies.

Third, Plaintiff moves to strike Defendants' Motion on the ground that it was improperly served. *See* Dkt. No. 20-1 at 5-6. Specifically, Plaintiff argues that Defendants violated Fed. R. Civ. P. 4 when they served a copy of the Motion through the mail instead of personally on Plaintiff. *Id.* at 5. However, as Defendants point out, Fed. R. Civ. P. 5(b)(2)(C) permits service of dispositive motions on parties by "mailing it to the person's last known address." As Plaintiff does not contest that he was served a copy of Defendants' Motion by the means described in Fed. R. Civ. P. 5(b)(2)(C), the Court declines to strike Defendants' Motion on the ground of improper service.

Accordingly, Plaintiff's motion to strike is denied.

**B. Plaintiff's Motion for a Guardian *ad Litem***

Plaintiff's motion for a guardian *ad litem* argues that "his Autism Spectrum Disorder, ADHD, and other developmental disability diagnoses" render him intellectually incapable of effectively understanding and countering the arguments presented in Defendants' Motion and, as a result, he contends that he is entitled to a general guardian under Fed. R. Civ. P. 17(c). Dkt. No. 28 at 3. In opposition, Defendants argue that Plaintiff's activity in this litigation to date, including by preparing and signing the Complaint and subsequent submissions, indicates that he is sufficiently capable of understanding the legal arguments presented in Defendants' Motion. *See* Dkt. No. 30 at 6-7. Moreover, Defendants contend that Plaintiff's personal and work history, including, *inter alia*, that he previously obtained the rank of Eagle Scout in the Boy Scouts of America, appears to live in his own apartment, and "is presumably able to generally manage his affairs," collectively warrants denial of the motion. *Id.*

Fed. R. Civ. P. 17(c)(1) permits the appointment of a representative, including a general guardian, for individuals with minor or incompetent status. A court's "duty to appoint a guardian *ad litem* or make such order as it deems proper, is triggered by actual documentation or testimony of mental incompetency[.]" *Perri v. City of N.Y.*, 350 Fed. Appx. 489, 491 (2d Cir. 2009) (internal

quotations and citations omitted).  The kind of documentation that may warrant appointment includes "evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent[.]" *Lewis v. Newburgh Hous. Auth.*, 692 Fed. Appx. 673, 674 (2d Cir. 2017), *as amended* (July 6, 2017).  Absent such documentation, "the district court is not required to undertake an inquiry into a *pro se* litigant's mental capacity." *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 n.4 (2d Cir. 2003).

Here, the Court agrees with Defendants that the appointment of a guardian *ad litem* in this matter is unnecessary.  First, Plaintiff fails to present any documentary evidence of the type courts traditionally consider when analyzing such a request.  While the Complaint annexes a letter from the New York State Office of People with Developmental Disabilities affirming that Plaintiff "has a developmental disability," Dkt. No. 1-1 at 2, Plaintiff has not submitted any documentation from a treatment provider or public agency showing that he (i) has been adjudicated incompetent; (ii) has been or is being treated for the type of mental illness that would render him legally incompetent; or (iii) is otherwise incapable of proceeding through this action without assistance. *C.f. Williams v. New York State Off. of Mental Health*, No. 10-CV-1022, 2011 WL 2690088, at *6 (E.D.N.Y. Apr. 25, 2011), *report and recommendation adopted*, 2011 WL 2708378 (E.D.N.Y. July 11, 2011) (even where plaintiff had a history of mental illness and the Court reviewed clinical evaluations of Plaintiff, the court found that there was not sufficient evidence in the record to conclude that the plaintiff was incompetent and that a guardian *ad litem* should be appointed) Thus, the Court's duty to undertake a review of Plaintiff's mental capacity has not been triggered. Regardless, the Court is satisfied that Plaintiff is sufficiently competent to represent himself based

on his activity in this matter to date.  As Defendants point out, Plaintiff has personally signed all the relevant pleadings and submissions in this case thus far, establishing his ability to articulate his claims.  Moreover, Plaintiff annexes his current resume to the Complaint, which establishes that he successfully obtained a high school diploma in 2021, was a student athlete on his high school's bowling and cross-country teams, was awarded the rank of Eagle Scout by the Boy Scouts of America in 2020, and maintains "[s]trong computer skills including experience with Microsoft Word."  Dkt. No. 1-1 at 6.  These facts further undermine Plaintiff's contention that a guardian *ad litem* is appropriate in this case.  *See Williams*, 2011 WL 2690088, at *6 (observing that the plaintiff's "written submissions in this case overall are no less organized or comprehensible than the submissions typically made by competent non-lawyers who litigate on their own behalf" which "indicate an ability to identify and seek to vindicate his interests in this case."); *see also Hockenjos v. City of N.Y.*, No. CV-13-27, 2014 WL 3530895, at *5 (E.D.N.Y. May 30, 2014) (denying guardian *ad litem* where, "to the best of the Court's knowledge, plaintiffs are living independently and managing their own affairs").

Accordingly, Plaintiff's motion for a guardian *ad litem* is denied.

### C.  Plaintiff's Motion to Resolve the Court's Deadlines Conflict

Plaintiff's final motion requests that his response to Defendants' Motion be stayed until such a time that his guardian *ad litem* motion is decided, arguing that the Court's deadline to respond to Defendants' Motion is "in conflict because if Plaintiff's [guardian *ad litem*] Motion is approved, . . . the [guardian] will assist Plaintiff in answer[ing] Defendants' Motion."  Dkt. No. 29 at 2-3.  Moreover, Plaintiff's final motion responds to certain of the arguments presented in Defendants' Motion, particularly by conceding that certain of his claims should be dismissed as a matter of law and requesting leave to file an amended complaint to, *inter alia*, remove those invalid claims.  *Id.* at 4-9.

First, with respect to Plaintiff's request for a third extension of time to respond to Defendants' Motion, the Court indicated in its May 27, 2025 text order that the June 27, 2025 response date was Plaintiff's "final opportunity to respond to the motion to dismiss," and "[n]o further extensions will be granted, and any response received after 6/27/2025 may be summarily stricken from the docket and may not be considered by the Court." Dkt. No. 27. Accordingly, consistent with its prior guidance, the Court declines to grant Plaintiff a further extension of time to respond.

Moreover, while filing an affirmative motion is a procedurally improper means to respond to Defendants' Motion, in light of Plaintiff's *pro se* status, the Court will consider Plaintiff's June 27, 2025 submission to the extent that any of the arguments made therein are relevant in assessing Defendants' Motion. The Court will also analyze Plaintiff's request for leave to amend in analyzing Defendants' Motion, *infra*.

Accordingly, Defendants' "motion to resolve the court's deadlines conflict, motion for leave to file an amended complaint, and partial answer to Defendants' motion to dismiss" is denied, except to the extent that the arguments presented, or relief requested therein, are relevant to analyzing Defendants' Motion.

### D. Defendants' Motion

#### i. Arguments Under Fed. R. Civ. P. 12(b)(1)

Defendants seek dismissal of Plaintiff's claims brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Rehabilitation Act of 1973 ("Rehabilitation Act") on the ground that Plaintiff lacks standing. First, Defendants argue that Plaintiff failed to raise any Title VII claims with the EEOC prior to filing the instant lawsuit, and therefore Plaintiff failed to exhaust his administrative remedies with respect to those claims. *See* Dkt. No. 10-6 at 12. Second, Defendants argue that Rehabilitation Act claims can only be brought by individuals "employed by

the federal government or institutions that receive federal financial assistance," and since Plaintiff

fails to allege in the Complaint that Defendant Saratoga Hospital is a federal agency or receives

federal funding, he lacks standing to assert claims under the Rehabilitation Act. *Id.* (citing *Veldran*

*v. Dejoy*, 839 Fed. Appx. 577 (2d Cir. 2021)).

In his June 27, 2025 submission, Plaintiff concedes that he did not exhaust his

administrative remedies with respect to any claims brought under Title VII, and accordingly

requests "leave to strike" those claims from the Complaint. Dkt. No. 29 at 7. Plaintiff further

acknowledges that he failed to exhaust his remedies with respect to claims brought under the

Federal Declaratory Judgment Act and Section 101 and 102 of the Civil Rights Act of 1991 and

similarly requests "leave to strike" those claims. *Id.* ("However, plaintiff maintains that

Defendants' [sic] actions did violate the [Americans with Disabilities Act] and The Rehabilitation

Act of 1973."). Accordingly, the Court dismisses on consent any of Plaintiff's claims intended to

be brought under Title VII, the Federal Declaratory Judgment Act, and Sections 101 and 102 of

the Civil Rights Act of 1991.

With respect to the claims that Plaintiff appears to bring pursuant to the Rehabilitation Act,

Plaintiff argues that he has proper standing to assert such claims because, contrary to Defendants'

contention, Defendant Saratoga Hospital "receives federal assistance including over $100 million

in CARES Act funding for COVID-19, over $60,000 from the Federal Communications

Commission (FCC) for telehealth services, other considerable revenues through Medicaid and

Medicare, and various other grants and federal programs in payment and in support of services

provided to the community." *Id.* Defendants did not respond to these additional allegations on

reply. *See generally*, Dkt. No. 30. As additional factual allegations contained in a *pro se* plaintiff's

opposition may be considered when analyzing the sufficiency of a cause of action, *Walker*, 717

F.3d at 122 n.1, the Court finds that Plaintiff has remedied the deficiency outlined by Defendants with respect to his Rehabilitation Act claims by asserting that Defendant Saratoga Hospital receives federal assistance.  As a result, the Court denies the portion of Defendants' motion that seeks to dismiss Plaintiff's Rehabilitation Act claims for lack of standing.

### ii.   Arguments Under Fed. R. Civ. P. 12(b)(6)

#### 1.   State Law Claims

##### a.   Defamation and Intentional Infliction of Emotional Distress

Plaintiff brings claims for "defamation of character" and intentional infliction of emotional distress, presumably pursuant to New York law.  With respect to the defamation claim, Plaintiff asserts that Defendant Bentley falsely told other hospital employees in or around June or July 2021 that Plaintiff (1) smoked marijuana while on duty; (2) consumed alcohol while on duty; (3) left "vulgar voicemails" for other employees while using an internet-based messaging system that was not part of the hospital's computer network; and (4) made "sexually harassing" remarks to another employee at the hospital.  Dkt. No. 1 at ¶¶ 143-151.  Plaintiff claims that these allegations were "malicious lies" that "very nearly caused [Plaintiff] . . . to end his own life," *id.* at ¶ 153, and ultimately impacted Defendant Dreimiller's decision to deny Plaintiff's termination appeal, *id.* at ¶ 156.  With respect to the intentional infliction of emotional distress claim, Plaintiff alleges, *inter alia*, that the misconduct of Defendant Bentley already described herein, as well as the misconduct of other non-party hospital employees that Plaintiff alleges also occurred during his employment at Defendant Saratoga Hospital, "was the proximate cause of extraordinary pain, suffering, and other damages, including serious emotion and psychological trauma."  *Id.* at ¶¶ 216-222.

In New York, actions for defamation and intentional infliction of emotional distress are subject to the one-year statute of limitations outlined in N.Y. C.P.L.R. § 215(3).  *See McKenzie v. Dow Jones & Co., Inc.*, 355 Fed. Appx. 533, 535 (2d Cir. 2009); *Solomon v. Siemens Indus., Inc.*,

8 F. Supp. 261, 285 (E.D.N.Y. 2014).  Therefore, since the actions underlying these claims occurred more than three years prior to the filing of the instant action, Plaintiff's causes of action for defamation and intentional infliction of emotional distress must be dismissed for failure to state a claim.

Accordingly, the Court grants the portion of Defendants' Motion that seeks to dismiss Plaintiff's defamation and intentional infliction of emotional distress claims.  And because those claims are time-barred, they are dismissed with prejudice.  *See, e.g.*, *Baez v. Kahanowicz*, 278 Fed. Appx. 27, 29 (2d Cir. 2008) (summary order) ("Th[e] [district court's] dismissal was properly with prejudice.  Any complaint filed after the district court's decision . . . would have exceeded the . . . statute of limitations.") (citation omitted).

### b.  Negligent Supervision, Retention, and Training

Plaintiff also brings claims for negligent supervision, retention, and training, again presumably pursuant to New York law.  Plaintiff alleges that certain employees of Defendant Saratoga Hospital failed to properly supervise, train, and wrongfully retained certain other employees in violation of various internal hospital policies.  *See* Dkt. No. 1 at ¶¶ 175-215.

While Defendants' Motion fails to address the issue, in New York, claims for negligent hiring, supervision, retention, and training, are subject to the three-year statute of limitations outlined in N.Y. C.P.L.R. § 214(5), and accrue on the date of the event on which the claim is based. *See Sanusi v. Dep't of Homeland Sec.*, No. 06-CV-2929, 2010 WL 10091023, at *20 (E.D.N.Y. Dec. 1, 2020); *see also Robertson v. Fluerinord*, No. 23-CV-04977, 2024 WL 4728544, at *4 (S.D.N.Y. Nov. 8, 2024).  Therefore, since Plaintiff's termination date occurred more than three years prior to the date on which the Complaint was filed, and thus the dates of the events giving rise to Plaintiff's causes of action for negligent supervision, retention, and training must have similarly occurred beforehand, these causes of action must be dismissed for failure to state a claim.

Accordingly, the Court grants the portion of Defendants' Motion that seeks to dismiss Plaintiff's negligent supervision, retention, and training claims. And because those claims are time-barred, they are dismissed with prejudice. *See, e.g.*, *Baez*, 278 Fed. Appx. at 29.

### c.  Negligent Misrepresentation

Plaintiff also brings a claim for negligent misrepresentation, arguing that Defendant misled Plaintiff regarding the scope and responsibilities of the Patient Transporter position.[6]  Dkt. No. 1 at ¶¶ 223-238.  Specifically, Plaintiff states that "[i]nstead of a job moving patients from one room to another . . . Plaintiff was surprised to discover that he was responsible for regularly transporting deceased patients to the hospital morgue and performing complex bio-hazard cleaning and maintenance duties for which he was not trained and not prepared psychologically or emotionally." *Id.* at ¶ 226.  Plaintiff claims that he "suffered psychological and emotional harm, financial loss, and career impairment when he relied upon Saratoga Hospital's material misstatements about the terms and conditions of [the Patient Transporter] job." *Id.* at ¶ 237.  Defendants seek dismissal on the ground that Plaintiff fails to plead the requisite "special relationship" necessary to sustain a negligent misrepresentation claim. *See* Dkt. No. 10-6 at 28-29.

To state a claim for negligent misrepresentation, Plaintiff must allege that:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

---

[6] In New York, negligent misrepresentation claims are typically subject to the six-year statute of limitations outlined in CPLR § 213(8). *See Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 701-02 (S.D.N.Y. 2002); *see also Fromer v. Yogel*, 50 F. Supp. 2d 227, 242-43 (S.D.N.Y. 1999).

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012) (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (N.Y. 1996). Thus, the "duty" or "special relationship" element of a negligent misrepresentation claim limits such claims to "situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." *Anschutz Corp.*, 690 F.3d at 114 (internal quotations and citation omitted).

Here, the Court agrees with Defendants that Plaintiff has not sufficiently alleged a specialized relationship with Defendants sufficient to set forth a claim for negligent misrepresentation. The facts as alleged demonstrate only that Plaintiff and Defendants engaged in an ordinary employer-employee relationship over the course of one month. This limited course of dealing does not support the existence of a special or "privity-like" relationship that is contemplated by the case law analyzing negligent misrepresentation claims. Indeed, "[c]ourts have routinely held that the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation." *Kwon v. Yun*, 606 F. Supp. 2d 344, 356 (S.D.N.Y. 2009) (citing cases).

Accordingly, the Court grants the portion of Defendants' Motion that seeks to dismiss Plaintiff's negligent misrepresentation claim. However, in light of Plaintiff's *pro se* status, the Court dismisses this cause of action without prejudice.

### 2. Federal Claims

Plaintiff's remaining claims brought under federal law include (1) hostile work environment; (2) disability harassment; (3) wrongful termination; and (4) disparate treatment.

Having already dismissed on consent these causes of action to the extent that they were brought pursuant to Title VII, the Federal Declaratory Judgment Act, or Sections 101 and 102 of the Civil Rights Act of 1990, the Court now analyzes each claim only under the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADA"), and the Rehabilitation Act, which are governed by the same standards in the employment discrimination context. *See Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 148-49 (2d Cir. 2024); *see also Wein v. N.Y.C. Dep't of Educ.*, No. 18-Civ-11141, 2020 WL 4903997, at *11 (S.D.N.Y. Aug. 19, 2020) ("Because '[t]he standards used to determine whether the [Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990,' the Court addresses [the plaintiff's] claims under these two laws together.") (citing, *inter alia*, *Petrone v. Hampton Bays Union Free Sch. Dist.*, 568 Fed. Appx. 5, 7 n.1 (2d Cir. 2014)).

As an initial matter, "[i]ndividuals may not be sued in their individual or personal capacity under the ADA or Rehabilitation Act." *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 155-56 (E.D.N.Y. 2010) (citing, *inter alia*, *Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir.2010)).[7] Thus, the Court dismisses Plaintiff's remaining federal claims against Defendants Dreimiller and Bentley.

The Court next turns to the viability of Plaintiff's remaining federal claims against Defendant Saratoga Hospital.

---

[7] Plaintiff concedes in his June 27, 2025 submission that the ADA "does not apply to individual defendants acting in their individual capacities." Dkt. No. 29 at 5.

### d.  Hostile Work Environment

Plaintiff alleges that, during his employment with Defendant Saratoga Hospital, he was "taunted and exposed to pervasive[,] abusive[,] and demeaning language, including profanity, insults, slurs, racist remarks, sexually suggestive insults and mocking, and similar discriminatory and hateful language." Dkt. No. 1 at ¶ 81.  Plaintiff cites examples of what he alleges cumulatively amounted to a hostile work environment, including (1) employees making racist remarks toward other employees; (2) a break room that was "in a state of disrepair" due to, *inter alia*, clutter and inappropriate posters that "included phonetic versions of human genitalia or slurs"; (3) employees allegedly enduring sexually harassing and demeaning remarks from other employees; and (4) supervisors who failed to intervene to curb inappropriate behavior.  *Id.* at ¶¶ 82-93.  Plaintiff claims that he was "ostracized and humiliated, relentlessly, straight through to his last day of work" and that "[t]he cumulative effect of [the] reckless verbal abuse [of others] was to mislead Plaintiff, who was working in his first job, into believing that such conduct was normal for the workplace and that he had to participate in order to maintain his position in good standing with his peers." *Id.* at ¶¶ 94-95.  Defendants' Motion argues that these allegations do not plausibly allege a hostile work environment claim in this context, since they do not involve conduct related to Plaintiff's disability, and because they do not rise to the level that is "sufficiently offensive, pervasive, or continuous enough to alter the conditions of [Plaintiff's] employment."  Dkt. No. 10-6 at 13-15.

Hostile work environment claims under the ADA require a plaintiff to show "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).  "[T]he victim must subjectively perceive the conduct as abusive," and the conduct must also be "severe or pervasive

enough to create an objectively hostile or abusive work environment." *Id.* (citations omitted). "Even an isolated act may be so serious that it requires the conclusion that the terms and conditions of employment were altered," and thus a plaintiff bringing a hostile work environment claim under the ADA "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Id.* (citations omitted).  Nevertheless, the complained of conduct must "create[] such an environment *because of* the plaintiff's [disability]."  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (emphasis added); *see also Murtha v. N.Y.S. Gaming Comm'n*, No. 17-Civ-10040, 2019 WL 4450687, at *12 (S.D.N.Y. Sept. 17, 2019) ("[I]n order to prevail on a hostile work environment claim, an ADA plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and was based on the plaintiff's disability.").  Courts assess the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Here, Plaintiff fails to set forth a plausible hostile work environment claim.  First, reading the allegations in the light most favorable to Plaintiff and affording Plaintiff all of the leniency typically afforded *pro se* litigants, the conduct that Plaintiff alleges created a hostile work environment does not relate to Plaintiff's Autism Spectrum Disorder, ADHD, or disabilities as a general matter.  This issue alone justifies dismissal of the claim.[8]  *See, e.g.*, *Zabar v. N.Y.C. Dep't*

---

[8] While Plaintiff generally alleges, albeit in a different section of the Complaint regarding his wrongful termination claim, that "several Patient Transporters" made "statements mocking [Plaintiff's] perceived disability," made accusations that Plaintiff had OCD, and engaged in "other forms of harassment related to [Plaintiff's] perceived disability," Dkt. No. 1 at ¶ 173, the Second Circuit has long maintained that "minor acts or occasional episodes do not warrant relief."

*of Educ.*, No. 18-Civ-6657, 2020 WL 2423450, at *6 (S.D.N.Y. May 12, 2020) ("The absence of factual allegations providing a causal nexus between Plaintiff's disability and the alleged adverse actions is fatal to Plaintiff's hostile work environment claim."); *Birnbach v. Americares Found. Inc.*, No. 3:19-cv-1328, 2020 WL 3510843, at *9 (D. Conn. June 29, 2020) (dismissing hostile work environment claim where "there [were] no allegations that any [of the misconduct] had anything to do with Plaintiff's alleged disability") (citations omitted).

In addition, Plaintiff's hostile work environment theory suffers from another defect. Plaintiff alleges that, because his colleagues were engaged in inappropriate workplace behavior, such as making racist and sexually harassing comments towards others, Plaintiff felt the need to participate in the same behavior, which resulted in his termination and thus altered the terms of his employment. *See* Dkt. No. 1 at ¶¶ 94-95. However, Plaintiff cannot allege that he was subjected to a hostile work environment while also maintaining that he participated in the conduct that gave rise to it. *See, e.g.*, *Daeisadeghi v. Equinox Great Neck, Inc.*, No. 2:16-cv-01698, 2019 WL 331637, at *11 (E.D.N.Y. Jan. 25, 2019) (no hostile work environment claim where Plaintiff "himself participated in similar, objectionable conduct"); *Mealus v. Nirvana Spring Water N.Y. Inc.*, No. 7:13-cv-00313, 2014 WL 4637219, at *13 (N.D.N.Y. Sept. 16, 2014) (finding a plaintiff cannot prevail on a hostile work environment claim where "Plaintiff actively participated in and contributed to the objectionable and inappropriate conduct about which []he now complains.") (citing *Heba v. N.Y.S. Div. of Parole*, 537 F. Supp. 2d 457, 468 (E.D.N.Y. 2007)).

---

*Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (citing *Kotcher v. Rosa & Sullivan Appliance Center, Inc.*, 957 F.2d 59, 62 (2d Cir. 1992)).

Accordingly, the Court grants the portion of Defendants' Motion that seeks to dismiss Plaintiff's hostile work environment claim.  However, in light of Plaintiff's *pro se* status, the Court dismisses this cause of action without prejudice.

### e.  Disability Harassment, Wrongful Termination, and Disparate Treatment

While Plaintiff brings separate causes of action for "disability harassment," wrongful termination, and disparate treatment, reading the Complaint in the light most favorable to Plaintiff, these three claims are best interpreted as a single claim for employment discrimination under the ADA and Rehabilitation Act, *see, e.g.*, *Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015), and thus the Court analyzes the viability of these claims together.[9]

To establish a *prima facie* case of discrimination under the ADA, "a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability."  *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  Defendants' Motion does not appear to dispute the first three elements.  Instead, Defendant Saratoga Hospital argues that it was unaware of Plaintiff's disability at the time that he was terminated and that the

---

[9] To the extent that Plaintiff brings a wrongful termination claim under New York law, and not pursuant to the ADA or Rehabilitation Act, that claim is not viable given Plaintiff's status as an at will employee. *See, e.g.*, *Bravia Cap. Partners, Inc. v. Fike*, No. 09-CIV-6375, 2010 WL 3359470, at *8 (S.D.N.Y. Aug. 5, 2010) ("There is no question that [plaintiff] was an at-will employee . . . New York law does not recognize a claim for wrongful termination in such a case.").  Plaintiff does not allege that his employment was subject to an agreement of fixed duration, and thus the Court presumes the employment relationship was a "hiring at will, terminable by either party." *Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) (quoting *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (N.Y. 1987)).  Accordingly, to the extent that Plaintiff intended to bring a separate claim for wrongful termination under New York law, the Court dismisses that claim.

actions cited in support of the decision to terminate Plaintiff bare no connection to Plaintiff's alleged disability, and thus Plaintiff fails to allege a sufficient causal connection between his Autism Spectrum Disorder and his termination.  Thus, the only question posed at this juncture is whether Plaintiff has adequately pled facts sufficient to satisfy the fourth element of a *prima facie* disability discrimination claim.

Courts analyzing the question of causation in the employment discrimination context have held that "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Dooley v. JetBlue Airways Corp.*, 636 Fed. Appx. 16, 21-22 (2d Cir. 2015) (applying the "minimal inference" standard to ADA discrimination claims).  Circumstances that may "give rise to an inference of discriminatory motive" include "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," as well as "preferential treatment given to employees outside the protected class." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).  Thus, discriminatory remarks " may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision." *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (citation omitted).  And "a plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees." *Novick v. Vill. of Wappingers Falls, N.Y.*, 376 F. Supp. 3d 318, 342-43 (S.D.N.Y. 2019) (internal quotation marks omitted and alterations adopted).

Here, reading the Complaint in the light most favorable to Plaintiff and affording him all of the leniency typically given to *pro se* litigants, the Court finds that Plaintiff has not adequately

pled a claim for employment discrimination.  While Plaintiff adequately alleges that Defendant
Saratoga Hospital was aware of his disability based upon the request made in his May 2021
interview to work on a part-time basis because of his Autism Spectrum Disorder, which Defendant
granted, *see* Dkt. No. 1 at ¶¶ 42-45, he fails to plead facts that are sufficient for the Court to infer
that his termination was made with a discriminatory motive.

As discussed above, Plaintiff can establish an inference of discrimination with allegations
of (1) discriminatory remarks made by decisionmakers; or (2) the disparate treatment of non-
disabled, similarly situated employees. *Chertkova* 92 F.3d at 91.  While Plaintiff alleges that he
"was ostracized and humiliated, relentlessly" during his employment at Defendant Saratoga
Hospital, such allegations are insufficient to support a causal connection between his termination
and disability. *Id.* at ¶ 94.  Specifically, Plaintiff alleges that other Patient Transporters engaged
in "a heartbreaking pattern of abuse," by making "statements mocking [Plaintiff's] perceived
disability, accusations of having 'OCD,' . . . and other forms of harassment related to [Plaintiff's]
perceived disability." *Id.* at ¶ 173.  Moreover, Plaintiff claims that immediately after he was
terminated and before he left the hospital, another member of the Patient Transport team "loudly
remarked to all within earshot . . . 'Look at this [expletive] queer!'" *Id.* at ¶ 133.  In determining
whether a comment is "probative of discriminatory intent," courts consider four factors: "(1) who
made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); (2) when the
remark was made in relation to the employment decision at issue; (3) the content of the remark . .
.; and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-
making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010).  While the
alleged comments certainly appear to have been demeaning and derogatory in nature, they also
appear to have been isolated and not made by the individuals who were ultimately responsible for

Plaintiff's termination.    Thus, these allegations are insufficient for the Court to infer that Defendant's termination of Plaintiff was motivated by discriminatory intent.  *See, e.g.*, *Dixon v. Int'l Fed'n of Accts.*, 416 Fed. Appx. 107, 110 (2d Cir. 2011) ("isolated derogatory remark" made by someone with no role in plaintiff's termination not enough to support claim of discrimination); *Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 406 (E.D.N.Y. 2018) (statements from "lower-level employees who did not have decision-making authority" do "not give rise to an inference of discrimination").

Plaintiff also fails to allege a causal connection between his termination and disability based upon Defendant Saratoga Hospital's purported disparate treatment of similarly situated employees.  Discriminatory intent can be inferred through a "showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotations and citations omitted). "A plaintiff relying on disparate treatment evidence must show []he was similarly situated in all material respects to the individuals with whom []he seeks to compare herself."  *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000)).  "[T]o satisfy [the] 'all material respects' standard for being similarly situated, a plaintiff must show that . . . similarly situated employees who went undisciplined engaged in comparable conduct."  *Graham*, 230 F.3d at 40 (citation omitted).  If a plaintiff sets forth facts establishing that an employer treated a similarly situated employee less favorably, however, the plaintiff must still allege that the "relevant comparator [was] not [a] member[] of the relevant 'protected group.'"  *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 688 (S.D.N.Y. 2018) (citing *Saji v. Nassau Univ. Med. Ctr.*, 724 Fed. Appx. 11, 16-18 (2d Cir. 2018)).  Here, Plaintiff maintains that he was terminated primarily for violating Defendant Saratoga Hospital's "Smoke Free Campus" policy for smoking

an electronic cigarette in the hospital break room on June 25, 2021. *See* Dkt. No. 1 at ¶¶ 59-70. Moreover, Plaintiff states, albeit in conclusory fashion, that other employees with his same job title frequently violated the "Smoke Free Campus" policy but were never reported or disciplined for doing so. *Id.* at ¶ 168 (accusing Defendant of "openly and regularly condoning the same conduct by other Patient Transporters"). Even if those allegations were enough to satisfy the "all material respects" standard necessary for the Court to find that those employees with the same job title were similarly situated to Plaintiff, Plaintiff fails to allege that the otherwise similarly situated employees were outside of Plaintiff's protected group, *i.e.*, that they are not disabled. *See generally*, Dkt. No. 1. Thus, Plaintiff fails to raise an inference of discrimination based on disparate treatment, as well. *See, e.g.*, *C.C. v. Google, LLC*, No. 24-Civ-7811, 2025 WL 1938809, at *5 (S.D.N.Y. July 15, 2025) ("As to [the plaintiff's] termination, however, the [complaint] does not allege that any similarly situated employee without a disability was retained while [the plaintiff] was terminated.").

Moreover, assuming *arguendo* that Plaintiff had sufficiently pled an inference of discrimination through disparate treatment, the burden of proof would shift to Defendant to show a "legitimate, nondiscriminatory reason for the employer's conduct." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In that regard, the Complaint itself outlines a litany of potential nondiscriminatory allegations that could justify Plaintiff's termination outside of the "Smoke Free Campus" policy violation, including, *inter alia*, that Plaintiff (1) left a vulgar voicemail for an unnamed co-worker; (2) used marijuana at work; (3) was high while on duty; (4) consumed alcohol at work; and (5) was drunk while on duty. Dkt. No. 1 at ¶¶ 102, 143-146.[10]

---

[10] Notably, Plaintiff does not allege that the comparator employees were accused of similar misconduct.

And Plaintiff does not sufficiently allege facts that establish that those "legitimate reasons . . . were not [the] true reasons [for termination], but were a pretext for discrimination." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (citation omitted).  Thus, while the Court dismisses this cause of action solely for the Complaint's failure to adequately plead a *prima facie* case, the fact that Plaintiff was accused of this additional workplace misconduct undermines Plaintiff's allegation that he was fired for violating the "Smoke Free Campus" policy.

Accordingly, the Court grants the portion of Defendants' Motion seeking to dismiss Plaintiff's "disability harassment," wrongful termination, and disparate treatment claims, which the Court interprets to be a single claim of discrimination under the ADA and Rehabilitation Act.[11] However, in light of Plaintiff's *pro se* status, as well as the "minimal burden" that "alleging facts suggesting an inference of discriminatory motivation" is meant to impose, *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015), this cause of action is dismissed without prejudice.

---

[11] While Plaintiff's June 27, 2025 submission seeks leave to file an amended complaint, Plaintiff fails to annex to that request a copy of the proposed amended complaint in violation of Northern District of New York Local Rule 15.1(a).  *See generally*, Dkt. No. 29.  Regardless, Plaintiff's submission previews the modifications that would be made to any proposed amendment, such as (1) removing the defamation claim; (2) removing Defendants Dreimiller and Bentley from the federal causes of action; and (3) a general contention that "[a]ny areas of the complaint where a 'valid claim' is alleged to not be clearly stated will be updated."  *Id.* at 5.  "[I]f a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion, then permitting amendment would be an act of futility that should not be sanctioned. . . . If, on the other hand, a proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny amendment."  *Castro v. Heath*, No. 9:12-CV-01250, 2013 WL 5354241, at *13 (N.D.N.Y. Sept. 23, 2013) (internal quotations and citations omitted) (granting motion for leave to amend only as to those assertions in proposed amended complaint that survive 12(b)(6) analysis).  As Plaintiff's June 27, 2025 submission has not set forth facts and circumstances that would entitle Plaintiff to additional relief, and in consideration of the fact that this Memorandum-Decision and Order addresses the modifications that Plaintiff alleges would be set forth in any proposed amended complaint, the Court denies as futile Plaintiff's request for leave to file an amended complaint.

V.     **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that Defendant's motion to dismiss, Dkt. No. 10, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's claims for defamation, intentional infliction of emotional distress, negligent training, negligent supervision, and negligent retention, are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's claims for negligent misrepresentation, hostile work environment, and disability discrimination are **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's motion to strike, Dkt. No. 20, is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion to appoint a guardian *ad litem*, Dkt. No. 28, is **DENIED**; and the Court further

**ORDERS** that Plaintiff's "motion to resolve the court's deadlines conflict, motion for leave to file an amended complaint, and partial answer to Defendants' motion to dismiss," Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.[12]

**IT IS SO ORDERED.**

Dated:  September 25, 2025
        Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[12] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein.